IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC MARINO | § | |
| | § | |
| V. | § | A-11-CV-587-LY |
| | § | |
| GABRIEL CUNNION, RICK RUTLEDGE, | § | |
| ARACELI AMAYA, DAVID POWELL, | § | |
| DUSTIN YOST in their individual | § | |
| capacities, and SHERIFF DANIEL LAW | § | |
| in his official capacity | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Sheriff Daniel Law's Motion for Summary Judgment (Clerk's Doc. No. 40) and Plaintiff's Response (Clerk's Doc. No. 42). The District Court referred these Motions to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended.

**I.   FACTUAL BACKGROUND**

On March 30, 2010, Gabriel Cunnion, a Deputy Sheriff with Caldwell County Sheriff's Office, was dispatched to 1700 Chalk Road, located in rural Caldwell County, Texas, after an anonymous caller allegedly reported "suspicious activity. Plaintiff's First Amended Complaint at p. 3. At some point after Deputy Cunnion arrived at the entrance gate to 1700 Chalk Road, Araseli Amaya, a Patrol Sergeant with Caldwell County Sheriff's Office, also arrived at the scene. Deputy Cunnion removed the chain on the entrance gate (which apparently was unlocked), opened the gate and proceeded to drive onto the property.

After driving some distance, Cunnion encountered Plaintiff Eric Marino and three other men stripping two trailers. Marino approached Deputy Cunnion, informing Cunnion that he was the owner of the property and that he had just purchased the trailers for the purpose of stripping and selling the metal for a profit. But after learning that the trailers had been reported stolen from Hays County, the officers arrested Marino and charged him with two felony offenses: Theft and Engaging in an Organized Criminal Activity. Plaintiff's First Amended Complaint at p. 3. Marino was transported to Caldwell County Jail and bond was set. Marino alleges, however, that Defendant David Powell provided the magistrate with false information which caused the magistrate to reconsider and deny Marino bond. Plaintiff's First Amended Complaint at p. 4.

Marino alleges that he was placed in "F" Tank, where Caldwell County Jail houses its most dangerous criminals. Marino asserts that for the first eleven days following his arrest, he was in the F cell block by himself, and was denied reading material, physical exercise, recreation, and was allowed outdoors for a total of two hours. *Id.* On the twelfth day, he was joined by other inmates. On April 26, 2010, Marino's attorney filed an Application for Habeas Corpus and Plaintiff was released on bond. *Id.* at p. 5. Marino spent a total of 29 days in the Caldwell County Jail. All criminal charges against Marino were ultimately dismissed.

On July 12, 2011, Marino filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983, against Deputy Gabriel Cunnion, Sergeant Araseli Amaya, Detectives David Powell and Dustin Yost of the Caldwell County Sheriff's Department, and Hays County Detective Rick Rutledge in their individual capacities, and Sheriff of Caldwell County Daniel Law, in his official capacity. Plaintiff's First Amended Complaint alleges that Defendants Cunnion, Amaya, Powell, Yost and Rutledge violated his Fourth and Fourteenth Amendment rights to be free from false arrest and false imprisonment.

Plaintiff further claims that Defendant Law subjected him to cruel and unusual punishment, in violation of Plaintiff's Eighth and Fourteenth Amendment rights.

Plaintiff specifically alleges that Law, acting in his official capacity, subjected him to cruel and unusual punishment by: (1) failing to promulgate a policy to ensure that persons charged with non-violent offenses are not segregated from other prisoners and thereby denied human contact or to enforce such a policy; (2) failing to promulgate a policy that provides that persons charged with non-violent offenses are provided with regular exercise or to enforce such a policy; (3) failing to promulgate a policy that provides that persons charged with non-violent offenses are provided nonphysical recreational activities or to enforce such a policy; and (4) failing to promulgate a policy that provides that persons charged with non-violent offenses are provided reading material or to enforce such a policy. Defendant Law now moves for summary judgment.[1]

## II.  STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec.*

---

[1] Defendants Gabriel Cunnion, Asraseli Amaya, David Powell, Dustin Yost and Rick Rutledge ("Defendants"), already filed a Motion for Summary Judgment arguing that they are entitled to qualified immunity with regard to Plaintiff's claims in this case. On Report and Recommendation of the undersigned, the District Court denied that motion.

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

### III. ANALYSIS

Law argues that he is entitled to summary judgment because Marino cannot establish the existence of a policy or custom that caused a violation of his constitutional rights. "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Marino's claims against Law in his official capacity are the equivalent of claims against Caldwell County. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). A local government may not be sued under § 1983 for the deprivation of rights guaranteed by the Constitution or federal law inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

4

official policy, inflicts the injury that the government entity is responsible under § 1983. *Monell v. New York City Dept.of Social Services*, 436 U.S. 658, 691 (1978). An official policy may be represented either by a policy or a custom. *Id.*, 436 U.S. at 693. The custom need not be formally adopted, however, as the Fifth Circuit has held that an "official policy" may be a persistent, widespread practice of officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). There must be a clear pattern sufficient to conclude that the unconstitutional conduct is directly attributable to the municipality, and isolated unconstitutional actions by municipal employees will almost never trigger liability. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

A plaintiff must identify the policy, connect the policy to the governmental entity itself and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984), cert. denied, 472 U.S. 1016 (1985). A plaintiff must also establish that the governmental entity through its deliberate conduct was "the moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Board of County Comm'r v. Brown*, 520 U.S. 397 (1997). As noted above, Marino alleges that Law violated his Eighth and Fourteenth Amendment rights because Law failed to promulgate policies to ensure persons charged with non-violent offenses: (1) are not segregated from other prisoners; (2) are provided with regular exercise; (3) are provided non-physical recreation activities; and (4) are provided reading materials. He further alleges that to the extent Caldwell County adopted policies on these issues, Law failed to enforce those policies.

### A. Standard for Pretrial Detainee

Although the rights of a convicted prisoner fall under the Eighth Amendment's prohibition against cruel and unusual punishment, the rights of a pre-trial detainee are protected by the Fourteenth Amendment. *Valencia v. Wiggins*, 981 F.2d 1440, 1445 (5th Cir. 1993), *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) ("The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners and do not apply to pretrial detainees such as the plaintiffs."). Because a pretrial detainee has not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Therefore, the Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment," and Marino's claims must be reviewed under the Fourteenth Amendment. *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996).

### B. Condition of Confinement Versus Episodic Act or Omission

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement" or "episodic act or omission." *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement

that constitute "punishment." *Hamilton*, 74 F.3d at 103. "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal—if it is arbitrary or purposeless." *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate government purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 646 (5th Cir. 1996). When a pretrial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir.2001). To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

    **C.**    **Custom or Policy**

Law argues that Marino has failed to show that Caldwell County maintained a policy or a custom or practice that caused any alleged constitutional violation. Additionally, Law argues that Marino cannot show that Law's failure to adopt any policy was the result of deliberate indifference to Marino's constitutional rights.

To make out a § 1983 claim Plaintiff must show that: (1) the municipality had a policy or custom, of which (2) a municipal policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation was the moving force behind the policy or custom. *See World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752–53 (5th Cir. 2009). Where an unwritten policy or custom is at issue, the plaintiff must demonstrate that the practice is so "persistent and widespread" as to constitute "permanent and well settled" policy. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (holding that the fact

that a constitutional violation occurred is ordinarily not enough to trigger municipal liability Municipal liability also requires proof of an "official policy," a "final" policymaker, and policymaker "knowledge" of, or "deliberate indifference" to, a risk of constitutional violation); *Burge v. St. Tammany Parish*, 336 F.3d 363, 369–73 (5th Cir. 2003); *Piotrowski v. City of Houston*, 237 F.3d 567, 578–83 (5th Cir. 2001). An isolated incident is typically not enough to demonstrate the existence of a custom or practice. *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). Instead, a plaintiff must demonstrate a pattern of wrongs that are both sufficiently numerous and sufficiently similar to the one that caused the plaintiff's injuries. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005); *Piotrowski v. City of Houston*, 237 F.3d 567, 581–82 (5th Cir. 2001); *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

With regard to a § 1983 claim based on the *failure* to establish a policy, the courts have held that it is only when such a failure "evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). "Deliberate indifference is a stringent standard of fault" and requires a showing of "more than negligence or even gross negligence." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *City of Canton*, 489 U.S. at 388). *See, e.g., Burge v. St. Tammany Parish*, 336 F.3d 363, 369–73 (5th Cir. 2003); *Piotrowski v. City of Houston*, 237 F.3d 567, 578–83 (5th Cir.2001); *see also Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Municipal liability analysis turns on whether a plaintiff establishes that the relevant policymaker knew or should have known that the alleged policy created a high risk of constitutional violations; this "knowledge" requirement is the "*sine qua non*

8

of municipal liability under section 1983." *Burge*, 336 F.3d at 370. This "generally requires that a plaintiff demonstrate 'at least a pattern of similar violations.'" *Id.* (citations omitted). Marino complains of several different aspects of his confinement, each of which is analyzed separately below.

    **1.**    **Segregation**

Marino alleges that the County failed to adopt a policy ensuring that persons charged with non-violent offenses are not segregated from other prisoners. First Amended Complaint at p. 6. Law responds that no constitutional right exists to be housed with other inmates and that Marino cannot point to a policy that caused his isolation. In his First Amended Complaint, Plaintiff alleges he was placed in "F tank," the cell block where Caldwell County houses its most dangerous felons. He complains that for eleven days he had no communication with any other prisoner and no human contact except for minimal interaction with jail guards. Eventually, on the twelfth day, other inmates were housed in Plaintiff's cell block so "Plaintiff at last had people with whom he could talk." First Amended Complaint at p. 5.

Though a convicted prisoner does not have a protectable liberty or property interest in his custodial classification, *t*he situation is different with a pretrial detainee. *Sandin v. Connor*, 515 U.S. 472, 483 (1995); *see also*, *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.), *cert. denied*, 488 U.S. 985 (1988). The Supreme Court has held that a detainee has a liberty interest, protected by the Due Process Clause, in not being punished without due process. *Bell*, 441 U.S. at 535. Applying this principle, the Fifth Circuit has concluded that for a pretrial detainee, the "use of punitive isolation without affording due process is unacceptable and violates the 14th Amendment." *Pembroke v. Wood County, Texas*, 981 F.2d 225, 229 (5th Cir. 1993). In *Pembroke*, Wood County jail officials placed Pembroke in isolation for five days for the purpose of punishing him without affording him

any due process protections. Here, Marino has testified that he was placed in an empty cell block for eleven days, with no notice or hearing. The County does not deny these facts. This is sufficient to demonstrate a Due Process violation absent some explanation for the County's decision to isolate Marino. The County, however, offers no explanation for its decision, nor does it deny that Marino was in fact isolated for 12 days.

But the primary issue on this motion is whether the County (or, more precisely, the Sheriff in his official capacity) can be held liable for Marino's segregation, either because the segregation resulted from a custom or practice, or because the lack of a policy prohibiting it was the result of deliberate indifference. There is no summary judgment evidence of any official policy, or informal practice, calling for the isolation of prisoners like Marino. Instead, Marino argues that the *lack* of a policy governing the segregation of prisoners was the cause of his isolation. Thus, to survive summary judgment, Marino must show that the County's failure to adopt a policy regarding the isolation of a pretrial detainee was deliberately indifferent to the rights of detainees not to be segregated. Oddly, in its summary judgment evidence the County offers no explanation of why it segregated Marino in the F tank. Nor does it discuss the absence of a policy on this issue. As the movant on the request for summary judgment, it is incumbent on the County to demonstrate that it is entitled to judgment as a matter of law. On the precise point before the Court, to do so the County must at least provide some evidence regarding its decision to segregate Marino, or some evidence regarding why it has no policies regarding the segregation of detainees. Given that since at least 1979 the Supreme Court has recognized the right of a pretrial detainee not to be punished, and since at least 1993 the Fifth Circuit has specifically recognized a constitutional right for pretrial detainees not to be segregated without notice and a hearing, it is possible that the Plaintiff can show that Caldwell County's apparent failure to have a policy in place addressing segregation of detainees was

the result of deliberate indifference to the rights of detainees, and that the lack of such a policy was a moving force in the injuries Marino contends he suffered. Thus, on this claim the Sheriff is not entitled to summary judgment.[2]

### 2. Exercise and Recreation

Marino alleges that the County failed to have a policy providing that non-violent inmates be provided regular exercise and recreation. The County, however, asserts that it did have a Recreation and Exercise plan and did provide Plaintiff with the opportunity to exercise and presents summary judgment evidence in support. The evidence is in dispute on this issue, however. The County's evidence purports to show that Marino was offered the opportunity for exercise on April 1, 6, 7, 8, 13, 14, 21, 28, and 29, but that he refused, and also that Marino did exercise on April 15, 20, and 22.

---

[2]The Court recognizes that in many cases in which liability under § 1983 is based on the "deliberate indifference" standard, the case law requires evidence of a pattern of incidents to demonstrate that the failure to act was an act of deliberate indifference. *E.g. Webster v. City of Houston*, 735 F.2d 838, 841-42 (5th Cir. 1984); *Cousin v. Small* 325 F.3d 627, 637 (5th Cir. 2003); *Thompson v. Uphur County*, 245 F.3d 447, 459 (5th Cir. 2001). But these cases all deal with situations in which particular facts present a risk of injury or constitutional violation. As noted in the text, the deliberate indifference standard is founded on demonstrating actual knowledge of the risk. *Burge*, 336 F.3d at 370 (referring to knowledge as the "*sine qua non*" of the deliberate indifference standard). When there is one or more published Supreme Court decisions establishing a right of a pretrial detainee not to be segregated, it is fair for a factfinder to conclude that a jail which imprisons pretrial detainees is, or should be held to be, aware of the decisions. The Supreme Court discussed a very pertinent example in *City of Canton* in the context of a failure to train claim:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*City of Canton*, 489 U.S. at 390 n.10 (citation omitted). In these circumstances, the requirement of a chain of incidents to prove knowledge of the risk of a constitutional violation is inapplicable—the "obviousness" of the risk is made known by the Supreme Court's decision itself.

Defendant's Exhibit 3.  Marino's affidavit denies this, and states that over 29 days of incarceration he was allowed exercise only two or three times, and that neither he, nor anyone in his tank, ever refused an opportunity for exercise during his incarceration.  Plaintiff's Exhibit A.

This fact dispute is not fatal to the County's motion on this claim, however.  Even assuming that Marino was not offered exercise or recreation, Marino must also identify a policy that caused this deprivation.  As a starting point, Texas regulations provide that:

> Each [jail] facility shall have and implement a written plan, approved by the Commission, for inmate physical exercise and physical recreation. Documentation of physical exercise and physical recreation shall be maintained for Commission review. Each inmate shall be allowed one hour of supervised physical exercise or physical recreation at least three days per week.

37 Texas Administrative Code § 285.1.  Consistent with this regulation, the County adopted an Exercise and Recreation Plan, which states:

EXERCISE

A. Every inmate will be offered the right to exercise or to recreation out-of-doors at least one hour three days per week.  Such activities will be conducted in the facility recreation area and subject to the operating hours of the recreation area.

B. Every inmate confined more than 10 days, will be allowed access to sunlight no less than one hour a week; preferably in the recreation area, weather permitting, as this area has direct sunlight.

C. Weather not permitting out-of-doors recreation, all inmates will be allowed access to the library or dayrooms for the purpose of recreation and physical exercise, following the same procedure as above.

D. While in the recreation area, inmates will have the opportunity to play handball.

E. While in the dayroom area of the jail, inmates will have access to cards, dominoes, checkers and chess.

Defendant's Exhibit 1. At best, Marino's evidence demonstrates a fact issue regarding whether the policy was followed in his case. But as has already been discussed, more than this is required to hold the County liable for any such violation. Marino must show that a custom or practice existed within the jail that was inconsistent with this policy. Because there is no evidence that the County regularly violated its own exercise policy, or allowed its jailers to do so, Marino has failed to demonstrate that there is a triable issue on the alleged denial of exercise.

Moreover, the "[d]eprivation of exercise is not a per se constitutional violation." *Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1484821, at *1 (5th Cir. 2001) (*citing Stewart v. Winter*, 669 F.2d 328, 336 n. 19 (5th Cir. 1982); *Miller v. Carson*, 563 F.2d 741, 751 n. 12 (5th Cir. 1997). "[W]hat is constitutionally required . . . is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis*, 2001 WL 1485821, at *1 (*citing Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.), *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982). To succeed on a claim under Section 1983 for lack of exercise, a prisoner must set forth facts sufficient to "support the existence of [a] health hazard under the specific circumstances involved." *Ruiz*, 679 F.2d at 1152. Plaintiff in this case has failed to plead any such specific circumstance which meant that denying him exercise during his month of incarceration would or did lead to an injury to his physical health.

For all of these reasons the County is entitled to summary judgment on this claim.

### 3.     Reading Materials

Marino also alleges that the County failed to promulgate a policy that non-violent offenders be provided with reading materials, or that it failed to enforce any policy it did have.

The County has proffered a copy of its Library and Law Library Plan as summary judgment evidence. Defendant's Exhibit 2. The policy states that the library cart will be taken to cells at least two times a week and that all inmates will be given the opportunity to check out books. *Id.* Once again, Marino fails to offer any summary judgment evidence that the County regularly violated these rules. As with the exercise claim, this claim also therefore fails.

## IV. RECOMMENDATION

The undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant Sheriff Daniel Law's Motion for Summary Judgment (Clerk's Doc. No. 40) as to the claims regarding not being permitted to exercise and not being provided reading material, and **DENY** the motion with regard to the claim of an unconstitutional segregation.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of January, 2013.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE